[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The instant proceeding arises out of an appeal from the approval of a subdivision proposal by the Borough of Naugatuck Planning Commission.
A review of the record and transcripts of proceedings before T. Sullivan, J. revealed the following factual scenario. The CT Page 8985 defendant B T Realty (Owner) is the owner of a 7.25 acre parcel of property located adjacent to Field Street in the Borough of Naugatuck. On October 2, 1989 the Owner submitted an application to the Borough of Naugatuck Planning Commission (Commission) seeking to subdivide the subject acreage into 15 building lots.
As part of the subdivision proposal, the Owner proposed a storm water and drainage plan that would have said water drain into a local pond, known as Baumer's Pond (Pond), which Pond was located below the subject property. At all times relevant here the drainage area of the Pond was some 360 acres, which included storm water drainage from several unrelated drainage systems as well as uncontrolled surface run-off. The Pond waters then flow into a brook known as Pigeon Brook (Brook). The plaintiffs, Derwood O. Nichols Family Trust Indenture (Trust) is the owner of property which is located some one-quarter (1/4) mile downstream from the Pond under which the Brook flows.
An explanation as to why the Brook runs under the Trust property seems to be in order. In 1928 during construction of Route 63 and adjacent areas, a closed culvert was built under the Trust property. At the time the culvert was built in accordance with specifications ordered by the State of Connecticut. The size of the culvert, on average is five feet-six inches wide and four feet-six inches high. At a later time a gasoline service station was located over the culvert. Since the time of the cultert's installation, there has been no structural change to the culvert.
Prior to and during the course of the instant application process, the Owner received approval of its storm water and drainage plan from several agencies and commissions: The Naugatuck Park and Recreation Department, the Borough of Naugatuck Inland/Wetlands Commission, The Naugatuck Water Pollution Control Board, The Borough of Naugatuck Police Department. All of these agencies based their respective decisions subsequent to reviewing substantial information from many sources including experts in the field of hydrology. The conclusion was reached that the drainage from the subject property into the Pond would have a minimal and insignificant impact on the rise in the level of the Pond and thereafter of the Brook. The Owner's experts testified that the drainage into the Pond from the subject property would rise one inch during a 50 year storm. The Commission's expert agreed with this computation and also with the conclusion that the subdivision would have a negligible effect on the Pond and its ability to handle the increase in runoff.
The Trust's consulting engineer stated that the proposed drainage system and its discharge into the Pond did not appear to create a condition which may adversely effect the Trust property. However, the Trust's engineer suggested that a review be made to CT Page 8986 see if there would be any effect on drainage facilities below the Pond during peak flow periods. No such review was done by the Trust. However, the Commission's engineer reported that drainage from the subdivision into the Pond would increase the flow into the Pond by approximately one and one-half percent (1.5%); and the engineer concluded that this increase would have minimal impact on the Pond and areas downstream.
Thereafter on January 8, 1990 the Commission voted to approve the subdivision application and notice of the Commission's decision was duly published in the Naugatuck Daily News on January 12, 1990. Subsequently the Trust took this appeal from the Commission's decision.
Though the Trust in its appeal claims several reasons why the Commission's decision should be reversed, the court must first determine whether the Trust is aggrieved by the Commission's decision; and it is incumbent on the Trust to establish aggrievement.
On July 5, 1990 and February 5, 1991 testimony was presented by the Trust before the Court, T. Sullivan, J. on the question of aggrievement. As a result of those proceedings, the following factual picture is presented. The distance between the subject property and the Trust's property is about one-half (1/2) mile. That since the culvert has been installed, the culvert has been able to handle the water coming down the Brook and no damage or loss has been sustained to the Trust property. The Trust admitted that there had been no overflow of the Brook up to the present time. The Trust was concerned with the fact that there may be some diversion of water from the subject property into the Brook that may cause an increase in the water levels of the Brook so that water will not be capable of going through the culvert. Further, the Trust has fears that there will be damage done to its property by a possible excessive water flow through the culvert. An engineer testified that the run-off from the subdivision would have a negligible effect on the Pond and the Brook.
At the outset, it must be determined whether or not the Trust has sustained the burden of proving the fact that it has been aggrieved by the decision of the Commission in granting the subdivision application.
"`"The fundamental test for determining aggrievement encompasses a well-settled twofold determination: first, `the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as CT Page 8987 distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision.'. . ."' Cannavo Enterprises, Inc. v. Burns, 194 Conn. 43, 47, 478 A.2d 601 (1984); Bakelaar v. West Haven, 193 Conn. 59, 65, 475 A.2d 283 (1984). `Aggrievement is established if "there is a possibility, as distinguished from a certainty, that some legally protected interest. . .has been adversely affected." O'Leary v. McGuinness, 140 Conn. 80, 83,98 A.2d 660 (1953).' Hall v. Planning Commission, 181 Conn. 442,445, 435 A.2d 975 (1980)." State Medical Society v. Board of Examiners in Podiatry, 203 Conn. 295, 299-300, 524 A.2d 636 (1987). A person does not become aggrieved, however, until the agency has acted. Hall v. Planning Commission, supra, 444. Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525, 530
(1987).
It is not necessary for one who claims to have been aggrieved by the action of a planing or zoning authority to establish his aggrievement before the board conducting the hearing. A person does not become aggrieved until the board has acted. Upon appeal, he must establish his aggrievement, and the court must decide whether he has sustained the burden of proving that fact. Fox v. Zoning Board of Appeals, 146 Conn. 665,666, 667, 154 A.2d 520. It was a question of fact for the court to determine. Luery v. Zoning Board, 150 Conn. 136,140, 187 A.2d 247.
I.R. Stick Associates, Inc. v. Town Council, 155 Conn. 1, 3
(1967).
It is quite clear that the Trust has no statutory basis for aggrievement in that the subject property is more than one-half mile away from the Trust property. Thus, the Trust, in order to CT Page 8988 be aggrieved, must establish that it satisfies both prongs of the two part test for aggrievement as they were stated previously.
It is a well established principle that mere generalizations and fears such as those about which the plaintiffs testified at the hearing do not establish aggrievement. Sheridan v. Planning Board, 159 Conn. 1, 14, 266 A.2d 396; Hughes v. Town Planning Zoning Commission, 156 Conn. 505, 508, 242 A.2d 705; Tucker v. Zoning Board of Appeals, 151 Conn. 510, 516, 199 A.2d 685; Joyce v. Zoning Board of Appeals, 150 Conn. 696, 698, 187 A.2d 239. Neither does the fact that the plaintiffs owned property abutting the proposed subdivision, in and of itself, establish aggrievement. See note 1, supra; Vose v. Planning Zoning Commission, 171 Conn. 480,484-85, 370 A.2d 1026.
Walls v. Planning Zoning Commission, 176 Conn. 475, 478 (1979).
It is the Trust's fears that the water level in the Pond and Brook will be increased to such an extent that it may flood the property and damage the gasoline station property. There is no evidence that such injury may occur; but the facts would establish that no injury will occur. Any increase in the water level of the Pond and Brook as a result of storm drainage from the subject property will be minimal and negligible. At best the Trust expressed concern, fear and apprehension that the storm drainage and water from the subdivision may result in flooding and damage to the Trust property. There was no evidence presented to support these concerns and fears. These unsubstantiated concerns, fears and apprehension do not establish aggrievement.
The Trust has failed to show that it had a specific, personal and legal interest in the subject matter of the Commission's decision, as distinguished from a general interest such as is the concern of all members of the community and that they were specifically and injuriously affected in their property or other legal rights.
Accordingly, the appeal from the decision of the Commission in granting the subdivision application is dismissed.
BYRNE, J. CT Page 8989