[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION CT Page 10152
This is an appeal from a decision of the defendant Zoning Board of Appeals of the Town of Darien granting a variance from the required front yard setback for two lots owned by the defendant J. Arthur Olson.
The lots in question are located on the westerly side of Leroy Avenue in Darien. These are two undeveloped lots of a three lot subdivision, which had roughly consisted of a front, middle and rear lot. The middle lot had earlier been conveyed out by the defendant Olson.
The front lot, Lot #49 on Assessor's Map #18, fronts on Leroy Avenue about 150 north from the corner formed by the intersection of Leroy Avenue and a private road, Rocaton Road. The variance allowed for this lot was a setback of 49 feet measured from the center line of Leroy Avenue instead of the 65 feet required by the ordinance. This action was taken as of August 1, 1991, in Zoning Board of Appeals Resolution Calendar No. 34-1991.
The second lot, Lot #51 on Assessor's Map #18, is a rear lot approximately 350 feet northwest from the corner of Leroy and Rocaton. The variance allowed for this lot was a set back of 40 feet instead of the required 90 feet from the lot's easterly boundary. This action was also taken as of August 1, 1991, in Zoning Board of Appeals Resolution Calendar No. 43-1991. The plaintiff claims he is aggrieved by the action of the Board in granting these variance. The plaintiff has pleaded the basis of his aggrievement in paragraphs 16 through 21 of his complaint, as follows:
 16. The Lots are located at or near the northwest corner of the intersection of Rocaton Road and Leroy Avenue in Darien.
 17. Rocaton Road is a private street, and the owners of the homes on the street are members of the Rocaton Road Association.
CT Page 10153 18. The only entrance into and egress from Rocaton Road is from, or to, respectively, Leroy Avenue.
 19. Members of the Rocaton Road Association, including plaintiff, maintain the grounds at the northwest and southwest corners of Rocaton Road and LeRoy Avenue, and plaintiff has purchased flowers and gardening materials used for such maintenance out of his personal funds. The grounds at the northwest corner of the intersection are within 100 feet of the front Lot, and construction of residences on the Lots as permitted by the variances will diminish the attractiveness of the entrance to the road.
 20. Construction of the residences on the Lots as authorized by the variances will affect plaintiff's ability to safely egress from Rocaton Road onto Leroy Avenue.
 21. The Lots collect a large amount of water, which ultimately drains into Cummings Brook. Plaintiff's residence is immediately adjacent to Cummings Brook, downstream from the Lots.
 22. Plaintiff is aggrieved as a result of the as facts alleged in paragraphs 16 through 21 hereinabove and pursuant to Connecticut General Statutes Section 22a-19.
The defendants have moved to dismiss the appeal on the claim that the plaintiff has no standing to appeal and is not aggrieved.
At the aggrievement hearing, the plaintiff appeared pro se. The plaintiff was offered an opportunity to present evidence on the issue of aggrievement and did testify.
An appellant must establish aggrievement for the court to have subject matter jurisdiction over the appeal. Hughes v. Town Planning and Zoning Commission, 156 Conn. 505, 507-09,242 A.2d 705 (1968).
 I.
The court finds that the plaintiff is not statutorily CT Page 10154 aggrieved pursuant to the provisions of General Statutes Section8-8 (a). The plaintiff presented no evidence that he owns property which abuts the lots in question. The plaintiff presented no evidence that his own residence is within a one hundred foot radius of either of the lots in question.
The plaintiff testified that he is a member of the Rocaton Road Association. The plaintiff claimed that the lots are located at or near the northwest corner of the intersection of Rocaton Road and Leroy Avenue in Darien. However, no evidence was presented to establish ownership of the roadbed of Rocaton Road nor was there any evidence presented to establish that the intersection was within a 100 foot radius of either lot. In fact, the calendar resolutions indicate that neither lot is within 100 feet of the intersection.
Moreover, even if there were such evidence of ownership by the association and 100 foot proximity, the association is not a party to this appeal. While our Supreme Court has recognized that an association may have standing to appeal as a representative of its members if any of its members would otherwise have standing to sue in their own right; Timber Trails Corporation v. Planning Zoning Commission, 222 Conn. 380,394-95, ___ A.2d ___ (1992), the court has found no authority for an individual member of an association which has not appealed to act in a representative capacity for that association in claiming Section 8-8(a) statutory aggrievement.
 II.
The court finds that the plaintiff is not aggrieved in the "classical" sense. To establish classical aggrievement requires that a two-part test be met: (1) the party claiming aggrievement must successfully demonstrate a specific, personal, and legal interest in the subject matter of the decision as distinguished from a general interest, such as is the common concern of all members of the community as a whole; (2) the party claiming aggrievement must successfully establish that this specific, personal and legal interest has been specially and injuriously affected by the decision. Hall v. Planning and Zoning Commission, 181 Conn. 442, 444-45, 435 A.2d 975 (1980). Mere generalizations and fears are not sufficient to establish aggrievement. Joyce v. Zoning Board of Appeals, 150 Conn. 696,698, 187 A.2d 239 (1962).
CT Page 10155 An examination of the allegations of aggrievement in the complaint indicates that these are primarily allegations which are not specific and personal to the plaintiff as opposed to the general interest of the community, for example, the claim that allowing the variance and consequent construction would diminish the attractiveness of the entrance to Rocaton Road. Indeed, the testimony of the plaintiff indicates that he does not reside adjacent or near to that entrance. The claim that the variance will affect plaintiff's ability to safely egress from Rocaton Road onto Leroy Avenue or cause non-resident parking on Rocaton Road was supported by no evidence at the hearing before the Board and by no evidence before this court other than conjecture and surmise.
The plaintiff claimed that construction on the lots as permitted by the variance would increase the possibility of flooding on plaintiff's property, where his residence is located close to Cummings Brook and downstream from the subject lot. However, this claim was not supported by any evidence at the hearing or before this court. Rather, the only evidence available to this court from the record is that of the defendant owner's experts that the drainage program developed for the property would diminish the likelihood of additional flooding.
 III.
The appellant finally claims standing to appeal under the provisions of C.G.S. 22a-19.
Assuming the Board is acting in an administrative capacity when considering an application for a variance, the appellant had a right to intervene in those proceedings by filing a verified pleading which, at least, must make allegations of some sort. Red Hill Coalition, Inc. v. Town Plan Zoning Commission,212 Conn. 727, 733-34, 563 A.2d 1347 (1989).
Usually, to claim standing to appeal or aggrievement under C.G.S. 22a-19, one must formally intervene in the proceeding for the limited purpose of raising environmental issues before the board by filing in that proceeding a verified pleading. Connecticut Fund for the Environment, Inc. v. Stamford,192 Conn. 247, 248 n. 2, 470 A.2d 1214 (1984); Mystic Marinelife Aquarium, Inc. v. Gill, 175 Conn. 483, 489-490, 400 A.2d 726
(1978). Although, under C.G.S. 22a-19, one apparently may join in an appeal properly taken by others who had filed a CT Page 10156 verified petition before the agency. Such intervening party may usually raise only environmental issues. Red Hill Coalition, Inc. v. Conservation Commission, 212 Conn. 710, 715-16,563 A.2d 1339 (1989).
Here, the appellant filed no verified petition before the board nor has he joined with anyone else who had filed such a petition in taking this appeal. For purposes of this appeal, the court will assume that it is possible under a broad reading of the statute that one may seek to assert a right to intervene and to establish oneself as aggrieved by verifying the complaint one has filed in which a claim of statutory and classic aggrievement has been asserted.
"The Environmental Protection Act authorizes only limited forms of relief and encompasses injunctive and declaratory relief but not a private claim for damages. Its purpose is to give private citizens a voice in ensuring that the air, water and other natural resources of the state remain protected, preserved and enhanced, and to provide them with "an adequate remedy to protect the air, water and other natural resources from unreasonable pollution, impairment or destruction." General Statutes Section 22-15. It, therefore allows a member of the general public to intervene in an existing judicial review of an agency action or to initiate an independent declaratory or injunctive action. General Statutes Section 22a-19. Although intervention is allowed, it is strictly limited to the raising of environmental issues. Mystic Marinelife Aquarium, Inc. v. Gill, 175 Conn. 483, 489-490, 400 A.2d 726 (1978). By permitting such intervention, the act confers standing to private persons to bring actions to protect the environment. Belford v. New Haven, 170 Conn. 46, 54, 364 A.2d 194 (1975). `Such standing, however, is conferred only to protect the natural resources of the state from pollution or destruction.' (Emphasis added). Id." Connecticut Water Co. v. Beausoleil,204 Conn. 38, 44-45, 526 A.2d 1329 (1987).
It is apparent from a reading of the record that the Board had previously considered alternatives to the request for the present variance and considered the question of drainage interference from possible construction into the setback area.
The only information concerning drainage and flooding which was presented to the Board was that presented by the defendant Olson's experts. Their proposal would reduce drainage into the CT Page 10157 brook during peak storm periods by the construction of a detention structure which would pond and then slowly release the surface water. Moreover, the question of flood control is peculiarly within the province of the Environmental Protection Commission.
The claim put forward by the plaintiff under C.G.S. 22a-19
is that the Zoning Board of Appeals usurped the authority of Darien's Environmental Protection Commission in determining the appropriateness of developing property designated as wetlands. Even if such an assertion were appropriate as 22a-19 claim, it is belied by the resolution of the Board which conditioned the variance on the need for "Environmental Protection Commission approval of all filling, regrading, and other activities in or near the wetlands." The plaintiff presented no evidence which would warrant standing to intervene in his own appeal under the provisions of C.G.S. 22a-19.
Consequently, the defendants' motions to dismiss the appeal because of the plaintiff's failure to establish aggrievement is granted.
NIGRO, J.