[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs appeal from the decision of the Planning Zoning Commission of the town of Plainville (Commission) granting to A. Audi Sons a permit to CT Page 2645 remove sand and gravel from their 23.3 acre plot of land known as Lot 7, Rear Camp Street in the town of Plainville.
I. AGGRIEVEMENT
The evidence before the court reveals that the Appellant Robert W. Mastrianni owns property at 261 Camp Street, Plainville. This property is approximately 215 feet north of the subject property. The proposed use of the subject property will cause dust to come upon the plaintiff's property and will generate noise which will intrude upon the plaintiff's property and is likely to have some adverse effect upon the market value thereof.
As to the plaintiff Jeannette Granger the court finds that she owns property at 6 Austin Street, Plainville, approximately 900 feet from the subject property. The proposed use of the subject property will cause dust to come upon this property and the noise generated therefrom will come upon this plaintiff's property. The said activity thereof is likely to have some adverse effect upon the market value of the plaintiff's property.
As to the plaintiff Tilcon Minerals, Inc., the court finds that this plaintiff owns residential rental property at 257 Camp Street, Plainville, which is proximate to the subject property. This property also will be subject to noise generated by the proposed use of the subject, dust will come upon this plaintiff's property, and the said activity is likely to have some adverse effect upon the market value thereof.
The court finds that each of the plaintiffs have established that their "specific, personal and legal interest has been specifically and injuriously affected by the decision." See Hall v. Planning Commission,181 Conn. 442, 444 (1980). "There is a possibility . . . that some legally protected interest has been adversely affected." Hall v. Planning Commission, supra, p. 445. (Emphasis added.) The plaintiffs have demonstrated that they "have a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest such as is the concern of the community as a whole . . ." Bell v. Planning Zoning Commission, CT Page 2646174 Conn. 493, 497 (1978).
II. ISSUES
A. The plaintiffs claim that the defendant Commission erroneously determined the application as a request for site plan approval, it being the plaintiffs' claim that the application should have been considered as a application for a special exception.
B. Further, the plaintiffs claim that it was error for the Commission to entertain the opinion of the Commission's attorney, transmitted through the town planner, after the close of the public hearing, to the effect that the application was an application for site plan approval.
III. FACTS
The applicants are the owners of a 26.3 acre parcel of property located in R-11 zone in the town of Plainville. The applicant applied to the Commission for permit to remove sand and gravel from the property, under the provisions of Article 9, Section 910.2 of the Regulations.
 The Planning and Zoning Commission may, after a public hearing, subject to the provisions of Article 6, grant a permit for the removal of sand, gravel or clay in any zone, under the following conditions: (Emphasis added.)
 a. The applicant shall submit a plan showing existing grades in the area from which the above material is to be removed, together with finishing grades at the conclusion of the operation.
 b. The plan shall provide for proper drainage of the area of the operation after completion and no bank shall exceed a slope of one (1) foot of vertical rise in two (2) feet of horizontal distance, except in the case of ledge rock. No removal shall take place within 20 feet of a property line. CT Page 2647
 c. At the conclusion of the operation, or of any substantial portion thereof, the whole area where removal takes place shall be covered with not less than four (4) inches of top soil and either seeded, planted with trees, shrubbery or cultivated. This requirement may be modified or waived, in part or in full, when, in the judgement [judgment] of the Planning and Zoning Commission, no practicable purpose is accomplished by adherence thereto where land is beyond redemption or cultivation.
 d. Except in a General Industrial or Quarry Industrial Zone, no stone crushers or other machinery not required for actual removal of the material shall be used.
 e. Before a permit is granted under this section, the applicant shall post a bond with the Planning and Zoning Commission, or its designated agent, in an amount approved by the Planning and Zoning Commission as sufficient to guarantee conformity with the provisions of the permit issued hereunder.
 f. Such permits shall be issued for a period not to exceed 2 years.
The plaintiffs claim that because 910.2 refers to Article 6 of the Regulations, this requires applications under 910.2 to be considered as applications for special exceptions rather than applications subject only to site plan approval.
More precisely, the plaintiffs claim that because 620 of Article 6 sets forth certain guidelines for the Commission in considering site plans all applications requiring site plans are subject to the broad discretion given to zoning commissions in considering applications for special exceptions.
 SECTION 620 GUIDES TO THE COMMISSION IN CONSIDERING SITE PLANS CT Page 2648
 In considering any site plan the Planning and Zoning Commission shall be guided by the following:
 1. The need for the proposed use in the proposed location.
 2. The existing and probable future character of the neighborhood in which the use is to be located.
 3. The location of main and accessory buildings in relation to one another.
 4. The height and bulk of buildings in relation to other structures.
 5. Traffic circulation within the site, amount, location, and access to parking and traffic load or possible circulation problems on existing streets.
 6. Availability of public sewer and water to the site, and possible overloading of water and sewerage systems.
 7. Location and type of display signs and lighting, loading zones and landscaping and screening.
 8. Safeguards to protect adjacent property and the neighborhood in general from detriment.
Hence, it is the plaintiffs' position that all applications requiring site plan approval are subject to proof of 1) need for the use; 2) the character of the neighborhood; 8) safeguards to protect adjacent property and the neighborhood. Therefore, the plaintiffs claim, as these criteria traditionally apply to special exceptions, all applications requiring site plan approval are in fact special exception applications. The plaintiff contends that to treat site plan approval as site plan approval, rather than as special exceptions, is error as a matter of law. It is further contended that it was error for the Commission to accept the opinion of its counsel that site plan approval is to be treated as CT Page 2649 site plan approval, rather than as special exceptions.
II. DISCUSSION
ISSUE A. Is site plan approval to be considered as, and treated the same as, special exceptions under the provisions of the regulations.
The determination of the proper legal interpretation of the ordinance is a question of law for the court. "The question of whether a particular statute or regulation applies to a given set of facts is a question of statutory interpretation . . ., the interpretation of provisions in the ordinance is nevertheless a question of law for the courts." Coppola v. Zoning Board of Appeals,23 Conn. App. 636, 640 (1990) (internal citations omitted).
The court looks to the Regulations to determine whether special exceptions are delineated and described by the ordinance itself. The court determines that Article 5, 500 of the Regulations, captioned "Special Exceptions Permitted in Any Zone" specifically lists the eleven categories of uses classified as special exceptions. The listing includes a multitude of uses; church, hospital, cemetery, public utility, etc., etc. The use which is the subject of this application is not listed as a special exception. The court cannot conceive of a reason why, if this use, which is the subject of this appeal, was intended to be a special exception, it would not have been so listed in the designation of special exceptions.
Conversely, the court notes that a large number of specifically permitted uses in the various zones throughout the town do require site plan approval. For example, all uses in the General Commercial Zones (Reg. 525); all uses in the Central Commercial Zones (Reg. 525); Condominiums and Multi-Family Dwellings (Reg. 540); all uses in the Restricted Industrial Zones (Reg. 545;); all uses in General Industrial Zones (Reg. 550); all uses in the Technology Park Zone (Reg. 551); etc. Permitted uses in most of the town's zones require site plan approval. CT Page 2650
Most of the permitted uses in the particular zones which are subject to site plan approval set forth their various guidelines for site plan approval, such as landscaping, drainage, lateral support and the like, depending upon the nature of the use. Most of the uses subject to site plan approval contain a mandatory or a discretionary requirement for a public hearing. All of the permitted uses subject to site plan approval refer to "the provisions and guides of Article 6." Similarly, all "Special Exceptions", as delineated in Article 5, also require a site plan and make those delineated special exception applications "subject to the site plan provisions and guides to the Commission set forth in Article 6." It is noted, however, that "Special Exceptions" as delineated in Article 5, do not contain within said Article 5 any criteria for the determination of special exception permit applications, whereas the site plan requirements of 910.2 contains its own listing of criteria, as do most other categories of permitted uses which specifically require site plan approval.
The plaintiffs contend, in essence, that because site plan approval, whether for special exceptions or for specifically permitted uses, are all subject to the criteria of 620, therefore all permitted uses requiring site plan approval, including this application for a site plan approval under 910.2 is in fact an application for a special exception.
That contention is untenable. First, the ordinance itself designates certain uses as permitted uses subject to site plan approval, and other uses specifically described as special exceptions. If the ordinance intended to treat the two categories as identical, there would be no rational reason to delineate special exceptions separately. If the ordinance chose to treat 910.2 activity as a special exception, the activity would have been listed under the multitude of activities designated as special exceptions under the specific listing in 500 of the ordinance.
The plaintiffs contend that this activity is not permitted in any zone in the town of Plainville, and therefore the less stringent requirements of only site CT Page 2651 plan approval cannot be applicable. The court does not credit this contention, as said 910.2 of the ordinance clearly states ". . . grant a permit for the removal of sand, gravel or clay in any zone. . . ." (Emphasis added.)
The plaintiff further contends that because 910.2 requires a public hearing this must be an application for a special exception, as General Statutes 8-2 requires a public hearing for special exceptions applications whereas General Statutes 8-3 does not require a public hearing for applications requiring only site plan approval. This contention is without merit. There exists no statutory or common law prohibition against local zoning authorities providing for either mandatory or discretionary public hearings, as is provided for in many of the site plan application procedures in this ordinance. Public input can often be of valuable assistance to a commission in determining whether a site plan adequately meets the requirements for that specific permitted use.
The distinction between the right, duty, power and prerogative of Commission in determining special exception applications and in determining site plan submission is very clear.
"When the Commission receives such a special permit application, it must, therefore, determine whether the particular proposal is suitable for the particular zone." Barberino Realty Development Corp. v. Planning Commission, 222 Conn. 607, 616 (1992).
Conversely, "The designation of a particular use of property as a permitted use establishes a conclusive presumption that such use does not adversely affect the district and precludes further inquiry into its effect on traffic, municipal services, property values, or the general harmony of the district" TLC Development, Inc. v. Planning Zoning Commission, 215 Conn. 527, 532, 533
(1990).
An unacceptable site plan cannot serve as a basis for denying an application but can only serve as a reason for requiring a modification of the site plan. TLC CT Page 2652 Development, Inc. v. Planning Zoning Commission, supra, p. 33.
Finally, in connection with an application for a special exception which, under the provisions of an ordinance, may also require site plan approval, an unacceptable site plan may be reason for denial of a special application if the unacceptable site plan causes the special exception application to fail to meet the criteria for the granting of the application for a special exception. See Barberino Realty Development Corp. v. Planning Zoning Commission, supra. The fact, however, that a special exception application may additionally require site plan approval does not cause permitted uses which require site plan approval to be applications for special exception.
Section 620 of the ordinance contains a compendium of guides for different types of site plans. Many of the "Guides" of 620 may be applicable to the determination of special exception application as listed in Article 5, as Article 5 does not list criteria of its own. Even there, one of the "Guides," 620.1, which states, "The need for the proposed use in the proposed location.", as a matter of law does not apply to special exceptions or to site plan approval, and is a proper criteria only as applies to public service needs, such as public utilities and arguably as used in this ordinance, non-profit and/or governmentally assisted housing zone, (ordinance 520). See Dwyer v. Public Utility Commission, 147 Conn. 229,231 (1960) for the limited use of "need" criteria. The criteria which the plaintiffs' seek to impose upon a site plan application for this permitted use are not applicable to this application. TLC Development, Inc. v. Planning Zoning Commission, supra.
Within this context however the general requirements for the physical content of site plans, under Article 6, are appropriate. These include the application fee, the scale of the site plan map and the like. (Ordinance 600.2). The general procedures for decision making, including the right to require modifications of site plans, are also of general applicability (Ordinance 600 Procedures). Section 910.2 properly refers the application to the relevant sections of Ordinance CT Page 2653 Article 6. Such reference however does not convert the application for site plan approval into an application for a special exception, or to subject the application to "Guides" which are solely applicable to special exception applications.
The Commission was correct in determining that this application was an application for site plan approval and was not an application for a special exception. The appeal does not claim that the application or the site plan was deficient in any technical aspect or that it failed to conform to the criteria set forth in Article 9, 910.
ISSUE B. The plaintiffs claim that they were denied the right to due process of law.
The first part of this claim is that the Commission failed to accept the plaintiffs' contention that this was a special exception application, as discussed heretofore. The second contention is that it was error for the Commission to entertain the opinion of its attorney Byrne, through its town planner DeVoe, that the application was for site plan approval rather than for a special exception.
This contention is unfounded, both procedurally and substantively. It is fundamental that a zoning commission may seek the advise of its attorney as concerns questions of law which come before the Commission. "The board, composed of laymen, is entitled to technical and professional assistance regarding matters beyond its expertise." Spero v. Zoning Board of Appeals, 217 Conn. 435, 444 (1991).
During the public hearing Mr. DeVoe, the Town Planner stated "I received the site plan. The site plan in general complies with your regulations." (p. 34, Hearing of 5/25/93). Thereafter the plaintiffs Nelson and Jeanette Granger, through their attorney Gregory Granger, who represents the plaintiffs in this appeal urged the Commission at length to apply the criteria of Article 6, 620, which he claims in this appeal and before the Commission, are applicable to this application. Later in the hearing he again urged the Commission to apply those CT Page 2654 criteria (Hearing 5/25/93, p. 38).
During the debate on the motion to approve one of the commissioners, Mr. Guarnina, expressed some confusion concerning this subject. Mr. DeVoe, the Planner, stated "I spoke today with Attorney Tom Byrne and I asked him to review this section with me. Attorney Byrne confirmed that this is — Section 910 — is not a special exception, a special permit . . . They are granting a permit in conjunction with that site plan application. Under 910, sub-section 2." (Hearing 5/25/93, p. 56.) Mr. Guarnina asked further questions concerning the lack of clarity of Regulations 910.
The Commission also had available to it the decision of the Superior Court, issued December 2, 1991 Hovhannession v. Planning Zoning Commission of the Town of Plainville, 7 CSCR 117. That decision specifically determined that the ordinance 620, 1 through 8, does not apply to site plan approval.
Mr. DeVoe also referred the Commission to its prerogative to modify the site plan if the Commission deemed that to be appropriate (Hearing 5/25/93, p. 56) which prerogative is properly reserved to the Commission under 610.2 Procedures. Discussions took place as to some suggestions as to re-planting, one of the criteria under Regulation 910.2C. The commission determined not to require changes in the details of the site plan.
The Commission had adequate information before it, aside from the town attorney through the planner, to make a concerned determination as to the legal status of the application. "In addition, there was no indication in the administrative record that the board treated the opinion of counsel as anything more than advice." Spero v. Zoning Board of Appeals, 217 Conn. 435, 445 (1991).
The plaintiffs' position that they should have the opportunity to reiterate their legal interpretation of the regulations, which they had fully articulated in the public hearing, is without merit. In essence, the plaintiffs' position that they should have had the further opportunity to reiterate their position so as to convince the Commission to make an erroneous decision as CT Page 2655 concerns the law applicable to the application is without merit.
For the reasons set forth herein, the decision of the Planning Zoning Commission of the Town of Plainville is affirmed.
Sullivan, J.